

FILE
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON

DATE AUG 0 2 2018
Fairhurst, CJ
CHIEF JUSTICE

This opinion was filed for record

at 8 a.m. on Aug 2, 2018

SUSAN L. CARLSON
SUPREME COURT CLERK

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of | ) | No. 94950-6 |
| | ) | |
| KEVIN LIGHT-ROTH, | ) | En Banc |
| | ) | |
| Respondent. | ) | Filed **AUG 0 2 2018** |
| | ) | |

MADSEN, J.—Kevin Light-Roth was convicted of second degree murder in 2004, and the trial court sentenced him to 335 months' confinement. In an untimely personal restraint petition (PRP), Light-Roth argued that *State v. O'Dell*, 183 Wn.2d 680, 358 P.3d 359 (2015), constitutes a significant and material change in the law that applies retroactively to his sentence, excepting him from RCW 10.73.100's time bar. In *O'Dell*, this court held while "age is not a per se mitigating factor," a sentencing court "must be allowed to consider youth as a mitigating factor when" relevant. *Id.* at 695-96.

The Court of Appeals granted Light-Roth's PRP and remanded for resentencing. We reverse the Court of Appeals and hold that *O'Dell* does not provide an exception to the time bar.

FACTS

On February 5, 2003, Light-Roth, who was 19 years old at the time, shot and killed Tython Bonnett. At that time, Light-Roth was living with Chris Highley and dealing methamphetamine. The evening that he was shot, Bonnett came to Light-Roth and Highley's apartment. Convinced that Bonnett stole his shotgun, Light-Roth confronted Bonnett and subsequently shot him in the chest. Light-Roth then told Curtis Stream, another friend who was present and witnessed the murder, "'[I]f you don't want to be a part of this, you can go ahead and leave. But if you say anything....' Light-Roth then showed him his gun and made a slicing gesture across his throat." Mot. for Discr. Review, App. at 23 (alterations in original). Moments later Light-Roth enlisted the help of Highley to dispose of Bonnett's body. Highley followed Light-Roth's instruction, though he later testified that he did so only because he feared for his life.

Hoping to avoid any suspicion, the next morning Light-Roth told Bonnett's girlfriend that he believed Bonnett had moved to New Mexico. Bonnett's body was subsequently found and Light-Roth was taken into custody. After detectives interviewed him, Light-Roth attempted to escape by using a pen to remove his leg shackles and handcuffs.

On June 1, 2004, a jury convicted Light-Roth of murder in the second degree while armed with a firearm and unlawful possession of a firearm. At sentencing, the State requested a maximum standard range sentence of 335 months' confinement. In justifying its recommendation the State said,

Here we have a Defendant who basically in cold blood murdered an acquaintance, or perhaps even a friend of his, for really no good reason at all, if ever you could have a good reason for taking the life of another human being.

After doing so, he demonstrated a complete disregard not only for human life but also just a considerable amount of contempt by the manner in which he disposed of Tython Bonnett's body and how he conducted himself in the six to seven days following the murder.

There is absolutely nothing redeeming about this man.

*Id.* at 45. Defense counsel requested that the court "impose the sentence in the mid to low range." *Id.* at 50. In support of his request, defense counsel added that Light-Roth was only 21 years old at the time of sentencing and that attention deficit disorder "has plagued him throughout his life." *Id.* at 50-51.

The court sentenced Light-Roth to 335 months' confinement. The sentencing judge explained his decision, stating,

I am satisfied that Mr. Light-Roth demonstrates classic sociopathic behavior, didn't care about anybody but himself, and I am satisfied he is dangerous. I am satisfied, as I pointed out, if he makes it out of prison and does not somehow change his life, then he is going to get his third strike, or try to escape and be killed by the police or run into somebody who is tougher than him who will take his life.

It is a shame that Mr. Light-Roth at such a young age is basically wasting his life. But at this point I am satisfied, having listened to the trial, and listened to the pre-trial, looking at the record, that Mr. Light-Roth's return to society, if he makes it out, . . . needs to be delayed as long as possible.

*Id.* at 57-58.

The Court of Appeals affirmed that judgment and sentence on direct appeal, and this court denied review on April 30, 2008. The United States Supreme Court subsequently denied a petition for a writ of certiorari on October 6, 2008. In 2016,

3

Light-Roth filed a PRP, arguing that he was entitled to a resentencing under *O'Dell*. The Court of Appeals granted Light-Roth's PRP in a published decision and remanded for resentencing. *In re Pers. Restraint of Light-Roth*, 200 Wn. App. 149, 401 P.3d 459 (2017). The State sought review of the Court of Appeals decision.

## ANALYSIS

In bringing a PRP, "a petitioner is entitled to full collateral review of a conviction or sentence if the petitioner proves actual prejudice from a constitutional error, or nonconstitutional error which inherently results in a complete miscarriage of justice." *In re Pers. Restraint of Gronquist*, 138 Wn.2d 388, 396, 978 P.2d 1083 (1999) (citing *In re Pers. Restraint of Cook*, 114 Wn.2d 802, 813, 792 P.2d 506 (1990)).

A PRP must not be "filed more than one year after the judgment becomes final if the judgment and sentence is valid on its face and was rendered by a court of competent jurisdiction." RCW 10.73.090(1). Because Light-Roth filed his PRP more than one year after his judgment and sentence became final, he must assert solely grounds for relief exempt from the one-year limit under RCW 10.73.100. *In re Pers. Restraint of Adams*, 178 Wn.2d 417, 422, 309 P.3d 451 (2013).

A petitioner can overcome the one-year time bar under RCW 10.73.100(6) if he can identify "(1) a [significant] change in the law (2) that is material and (3) that applies retroactively." *In re Pers. Restraint of Colbert*, 186 Wn.2d 614, 619, 380 P.3d 504 (2016). There is no requirement in statute or case law that these elements must be

4

considered in a specific order. We can resolve this case by deciding whether our decision in *O'Dell* constitutes a "significant change in the law."

A "significant change in the law" occurs "when an intervening appellate decision overturns a prior appellate decision that was determinative of a material issue." *State v. Miller*, 185 Wn.2d 111, 114, 371 P.3d 528 (2016). An "intervening appellate decision that 'settles a point of law without overturning prior precedent' or 'simply applies settled law to new facts' does not constitute a significant change in the law." *Id.* at 114-15 (quoting *In re Pers. Restraint of Turay*, 150 Wn.2d 71, 83, 74 P.3d 1194 (2003)). A "significant change in the law" is likely to have occurred if the defendant was unable to argue the issue in question before publication of the intervening decision. *Id.* at 115. The pertinent inquiry here is whether our decision in *State v. Ha'mim*, 132 Wn.2d 834, 940 P.2d 633 (1997), precluded Light-Roth from raising or the trial court from considering Light-Roth's youthfulness as a mitigating factor to support an exceptional sentence downward.

In *Ha'mim*, the defendant, who was 18 years old at the time of her crime, was convicted of first degree robbery. *Id.* at 836. The sentencing court imposed an exceptional sentence below the standard range, taking into "account the Defendant's age and the fact she had no prior offenses." *Id.* at 837. The Court of Appeals reversed. *Id.* at 838. In affirming the Court of Appeals, this court held that the defendant's "age is not alone a substantial and compelling reason to impose an exceptional sentence." *Id.* at 847.

While the court held that in general, "[t]he age of the defendant does not relate to the crime or the previous record of the defendant," it also explained that

> [t]he [Sentencing Reform Act of 1981] does include a factor for which age could be relevant. RCW 9.94A.390[1] provides a nonexclusive list of illustrative factors a court may consider when imposing an exceptional sentence and includes as a mitigating factor that the defendant's capacity to appreciate the wrongfulness of his or her conduct or to conform his or her conduct to the requirements of the law was significantly impaired. RCW 9.94A.390(1)(e).

Id. at 847, 846 (emphasis added).

Eleven years after Light-Roth's sentencing, this court, in O'Dell, again addressed whether youthfulness may be considered to support a departure from the standard sentencing range. In O'Dell, the defendant was convicted of second degree rape of a child. 183 Wn.2d at 683. At sentencing, the defendant requested an exceptional sentence below the standard range because his youthfulness impaired his "'capacity to appreciate the wrongfulness of his conduct, or to conform his conduct to the requirements of the law.'" Id. at 685. The sentencing judge denied the defendant's request, holding that Ha'mim precluded him from considering age as a mitigating factor. Id. This court reversed, holding that while "age is not a per se mitigating factor automatically entitling every youthful defendant to an exceptional sentence," a trial court is permitted to consider youth as a mitigating factor. Id. at 695-96.

Light-Roth argues this holding is a "significant change in the law" because, prior to O'Dell, "the argument that youth relates to the crime was unavailable." Suppl. Br. of

---

[1] Recodified as RCW 9.94A.535.

Light-Roth at 11. Specifically, he argues that *Ha'mim* "precluded a sentencing court from considering as a non-statutory mitigating factor a youth's lack of maturity and impulsiveness based on the notion that they do not relate to a defendant's crime or culpability." *Id.* Light-Roth contends *Ha'mim*'s cite to *State v. Scott*, 72 Wn. App. 207, 866 P.2d 1258 (1993), *aff'd sub nom. State v. Ritchie*, 126 Wn.2d 388, 894 P.2d 1308 (1995), shows that *Ha'mim* adopted the view that youth could never be considered to support an exceptional sentence downward. Suppl. Br. of Light-Roth at 9.

In *Scott*, the defendant, who was convicted of second degree murder, argued that his youthfulness should have been considered at sentencing. *Scott*, 72 Wn. App. at 218. The Court of Appeals rejected this argument. Citing the facts of the crime, the court observed that the defendant's argument, that his age limited his "'capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law,'" "borders on the absurd." *Id.* The court added that the defendant's conduct "cannot *seriously* be blamed on his 'lack of judgment' . . . . *Premeditated murder is not a common teenage vice.*" *Id.* at 219 (emphasis added). We think Light-Roth reads *Scott* too broadly.

In *O'Dell*, we stated that *Ha'mim*

> *did not bar trial courts from considering a defendant's youth at sentencing;* it held only that the trial court may not impose an exceptional sentence automatically on the basis of youth, absent any evidence that youth in fact diminished a defendant's culpability.

183 Wn.2d at 689 (emphasis added). We explained that *Ha'mim* did not preclude a defendant from arguing youth as a mitigating factor but, rather, it held that the defendant

7

must show that his youthfulness relates to the commission of the crime. 132 Wn.2d at 846. In explaining *Ha'mim*, we pointed out that the defendant in *Ha'mim* had failed to show that her "capacity to appreciate the wrongfulness of her conduct or to conform it to the requirements of the law were in any way impaired" by her youth. *Id.* The same is true of the defendant in *Scott*. Based on the facts there, the court rejected the defendant's argument because his conduct could not "*seriously* be blamed on his 'lack of judgment.'" *Scott*, 72 Wn. App. at 219. Neither *Scott* nor *Ha'mim* categorically precludes consideration of youth as a mitigating factor.

In *O'Dell*, we reiterated the general proposition relied on in *Scott* and *Ha'mim*, that "age is not a per se mitigating factor." 183 Wn.2d at 695-96. Contrary to Light-Roth's contentions, RCW 9.94A.535(1)(e) has always provided the opportunity to raise youth for the purpose of requesting an exceptional sentence downward, and mitigation based on youth is within the trial court's discretion. *Id.* at 698-99 ("We hold that a defendant's youthfulness can support an exceptional sentence below the standard range . . . and that the sentencing court must exercise its discretion to decide when that is."). The fact that Light-Roth misinterpreted *Ha'mim* is of no consequence in determining whether *O'Dell* constitutes a "significant change in the law." *See Miller*, 185 Wn.2d at 116 ("A 'significant change in the law' requires that the law, not counsels' understanding of the law on an unsettled question, has changed.")

Light-Roth also argues that *O'Dell* constitutes a "significant change in the law" because the court in *O'Dell* disavowed *Ha'mim*'s reasoning to the extent that it was

inconsistent with our decision. Suppl. Br. of Light-Roth at 11. Specifically, *O'Dell* explained that youth

> is far more likely to diminish a defendant's culpability than this court implied in *Ha'mim*; and that youth can, therefore, amount to a substantial and compelling factor, in particular cases, justifying a sentence below the standard range.

183 Wn.2d at 696. While *O'Dell* broadened our understanding of youth as it relates to culpability, it did not alter the court's interepretation of RCW 9.94A.535. Whether there has been a "significant change in the law" primarily rests on whether the defendant "'could have argued this issue before publication of the decision.'" *In re Pers. Restraint of Lavery*, 154 Wn.2d 249, 258-59, 111 P.3d 837 (2005) (quoting *In re Pers. Restraint of Stoudmire*, 145 Wn.2d 258, 264, 36 P.3d 1005 (2001)).

It is also significant that, in *O'Dell*, we found the trial court's "failure to exercise discretion is itself an abuse of discretion subject to reversal." 183 Wn.2d at 697. A trial court cannot abuse discretion it does not have. If *Ha'mim* precluded trial courts from considering youth as a mitigating factor, we would have ruled that it was an error of law for the trial court to refuse to consider youth in *O'Dell*.[2] *See Williams v. Tilaye*, 174 Wn.2d 57, 61, 272 P.3d 235 (2012) ("Statutory interpretation is a question of law

---

[2] While the concurrence argues that we did rule it was an error of law for the trial court to refuse to consider youth, our opinion in *O'Dell* contains no such language. Instead, it appears that the concurrence is arguing that the trial court's failure to exercise discretion constituted an error of law. This is a distinction without a difference. The fact that we held the court abused its discretion, as the concurrence concedes, demonstrates that *O'Dell* did not create a significant change in the law. Indeed, it would be odd to find a significant change in the law in *O'Dell*, and that the trial court abused its discretion in failing to apply a law that did not yet exist.

reviewed de novo"). Here, Light-Roth could have argued youth as a mitigating factor, as he was permitted to do so under *Ha'mim*.[3]

Because *O'Dell* does not constitute a "significant change in the law," we do not reach whether it applies retroactively or is material to Light-Roth's case.

## CONCLUSION

We reverse the Court of Appeals, and hold that Light-Roth's PRP is time barred, as it was filed more than one year after his judgment became final and he is not exempt from the one-year time limit.

---

[3] Notably, in 2005, the United States Supreme Court, in *Roper v. Simmons*, 543 U.S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005), held that it was unconstitutional to impose the death penalty on individuals under the age of 18. The Court explained that juveniles have a diminished culpability because they "'lack . . . maturity,'" have "'an underdeveloped sense of responsibility,'" and are "more vulnerable or susceptible to negative influences and outside pressures," and their character is not as "well formed as that of an adult." *Id.* at 569-70 (quoting *Johnson v. Texas*, 509 U.S. 350, 367, 113 S. Ct. 2658, 125 L. Ed. 2d 290 (1993)). While *Roper* was published after Light-Roth's sentence, it was published before his 2007 appeal. *State v. Light-Roth*, noted at 139 Wn. App. 1093 (2007). Even assuming *Ha'mim* precluded Light-Roth from arguing youth as a mitigating factor, which it did not, Light-Roth still could have raised the argument on appeal by invoking *Roper*. He did not.

No. 94950-6

_Madsen, J._

WE CONCUR:

_Fairhurst, C.J._

_Johnson, J._

_Owens, J._

_Stephens, J._

_Wiggins, J._

_Van Deren, J.P.T._

_Yu, J._

11

No. 94950-6

GONZÁLEZ, J. (concurring in result)— I concur with the majority that Kevin

Light-Roth is entitled to relief only if he can show his personal restraint petition

falls within an exception to the one-year time bar. *See* RCW 10.73.090. One

exception to the time bar is a significant, material, retroactive change in the law.

RCW 10.73.100(6). Light-Roth contends that the rule we articulated in *State v.*

*O'Dell*, 183 Wn.2d 680, 358 P.3d 359 (2015) meets these requirements. *O'Dell* is

significant and retroactive. However, since it is not material to Light-Roth's

conviction, I concur in result only.

In *O'Dell*, we held that a sentencing court "must be allowed to consider

youth as a mitigating factor when" relevant. *Id.* at 695-96. This directly abrogated

*State v. Ha'mim*, where we held age was not a mitigator. 132 Wn.2d 834, 847, 940

P.2d 633 (1997).

In *Ha'mim*, we decided the "age of the defendant does not relate to the crime

or the previous record of the defendant," and held a defendant's youth cannot

justify imposing a more lenient sentence. 132 Wn.2d at 846-47 (quoting *State v.*

*Scott*, 72 Wn. App. 207, 218-19, 866 P.2d 1258 (1993), *aff'd sub nom. State v.*

*Richie*, 126 Wn.2d 388, 894 P.2d 1308 (1995)). In *O'Dell*, we disavowed *Ha'mim* because it "contains reasoning that some . . . have understood as *absolutely barring* any exceptional downward departure sentence below the range on the basis of youth. That reasoning has been thoroughly undermined by subsequent scientific developments." *O'Dell*, 183 Wn.2d at 698 (emphasis added); *see also* Alexandra O. Cohen et al., *When Does a Juvenile Become an Adult? Implications for Law and Policy*, 88 TEMPLE L. REV. 769, 786 (2016).[1]

For many years, *Ha'mim* effectively foreclosed mitigation arguments based on the age of a defendant, particularly the availability of exceptional downward sentences.[2] *See, e.g., State v. Wright*, No. 44821-1-II, slip. op. at 7 (Wash. Ct. App. Nov. 4, 2014) (unpublished) ("[T]he trial court concluded that Wright's lack of judgment due to her age and inexperience significantly impaired her capacity to conform to the requirements of the law. This conclusion is similar to the reasoning that the Supreme Court rejected in *Ha'mim*."), http://www.courts.wa.gov/opinions/pdf/D2%2044821-1-

---

[1] Contrary to the majority's claim, we *did* rule "it was an error of law for the trial court to refuse to consider youth in *O'Dell*." Majority at 9; *see O'Dell*, 183 Wn.2d at 696. The trial court's failure to exercise discretion, when it did not know it had discretion, resulted in reversal.

[2] Age was among the mitigating factors not considered per se. *See, e.g., State v. Law*, 154 Wn.2d 85, 97, 110 P.3d 717 (2005) (exceptional sentences cannot be "based on factors personal in nature to a particular defendant."). *O'Dell* preserved this aspect of *Ha'mim*, and this aspect is likely the source of the majority's confusion. *O'Dell*, 183 Wn.2d at 695 ("It remains true that age is not a per se mitigating factor automatically entitling every youthful defendant to an exceptional sentence.").

2

II%20Unpublished%20Opinion.pdf. When *Ha'mim* was decided, mitigation arguments at sentencing were routinely denied. *See State v. Freitag*, 127 Wn.2d 141, 148, 896 P.2d 1254, 905 P.2d 355 (1995) (Madsen, J., dissenting) ("In sharp contrast to [the court's] findings regarding nonstatutory aggravating factors, this court has rarely found mitigators to be justified unless statutorily provided"); Nick Straley, Miller*'s Promise: Re-Evaluating Extreme Criminal Sentences for Children*, 89 WASH. L. REV. 963, 985 (2014) (describing the state of juvenile sentencing under the Sentencing Reform Act of 1981 (SRA)).

As Light-Roth served his sentence, "the law of juvenile sentencing changed dramatically." *State v. Scott*, 190 Wn.2d 586, 589, 416 P.3d 1182 (2018) (citing *O'Dell*, 183 Wn.2d at 696).[3] A significant change in the law means that an argument that was previously unavailable is now available. *In re Pers. Restraint of Yung-Cheng Tsai*, 183 Wn.2d 91, 104-05, 351 P.3d 138 (2015) (quoting *In re Pers.*

---

[3] The majority, assuming that *Ha'mim* precluded Light-Roth's ability to argue youth as a mitigating factor, faults Light-Roth for failing to raise *Roper v. Simmons*, 543 U.S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005) in his 2007 appeal to make the argument eventually adopted in *O'Dell*. The briefs on the direct appeal were not provided to this court, so it is also unclear if this is true. It should be noted, however, that earlier attempts to raise *Roper* have had inconsistent results. *Compare State v. Ramos*, No. 30279-2-III, slip op. at 30 (Wash. Ct. App. Apr. 16, 2013) (unpublished) ("The SRA does not require courts to be more lenient to juveniles or even encourage it."), http://www.courts.wa.gov/opinions/pdf/302792.pdf, *with In re Pers. Restraint of Solis-Diaz*, noted at 170 Wn. App. 1042, 2012 WL 5348865, at *6 (remanding in light of *Roper* because the court "'cannot say that the sentencing court would have imposed the same sentence had it known an exceptional sentence was an option.'" (internal quotation marks omitted) (quoting *In re Pers. Restraint of Mulholland*, 161 Wn.2d 322, 334, 166 P.3d 677 (2007))). Whether *Roper* undermined the generalizations underlying *Ha'mim* supports the proposition that *O'Dell* was a significant change in the law.

*Restraint of Greening*, 141 Wn.2d 687, 697, 9 P.3d 206 (2000)). Relying on

*O'Dell*, the Court of Appeals reversed a trial court that had (before *O'Dell* was

announced) concluded it could not impose an exceptional sentence based on

youthfulness despite "'incredibly compelling'" evidence on juvenile brain

development. *State v. Ronquillo*, 190 Wn. App. 765, 773-74, 361 P.3d 779

(2015). A similar result occurred in *State v. Houston-Sconiers*, where the "trial

court . . . did not have the benefit of the *O'Dell* decision at the time of petitioners'

sentencing, and that accounts for its belief that its exceptional sentence below the

SRA range on the case crimes was *technically illegal under state law*." 188 Wn.2d

1, 24, 391 P.3d 409 (2017) (emphasis added); *see also State v. Solis-Diaz*, 194 Wn.

App. 129, 138, 376 P.3d 458 (2016) ("the trial court here decided that

under *Ha'mim* it could not consider the defendant's youth as a mitigating factor in

sentencing"), *rev'd in part on other grounds*, 187 Wn.2d 535, 387 P.3d 703 (2017).

Our decision in *O'Dell* substantially changed how sentencing courts consider a

defendant's youthfulness. *See In re Pers. Restraint of Light-Roth*, 200 Wn. App.

149, 160, 401 P.3d 459 (2017) ("It would be disingenuous to suggest that *O'Dell*

merely clarified *Ha'mim*'s holding or applied settled law to new facts.").

In *O'Dell* we revisited the "*same question* this court considered in" *Ha'mim*, but

arrived at a different conclusion. 183 Wn.2d at 689 (emphasis added). Plainly, it

is a significant change in the law.

Further, because *O'Dell* reinterpreted a provision of the SRA, its holding is retroactive. "Once the Court has determined the meaning of a statute, that is what the statute has meant since its enactment." *In re Pers. Restraint of Johnson*, 131 Wn.2d 558, 568, 933 P.2d 1019 (1997) (citing *In re Pers. Restraint of Vandervlugt*, 120 Wn.2d 427, 436, 842 P.2d 950 (1992); *see also In re Pers. Restraint of Hinton*, 152 Wn.2d 853, 859-60, 100 P.3d 801 (2004).

Nonetheless, Light-Roth fails to show *O'Dell* was material to his sentence. While Light-Roth could not successfully argue his youthfulness entitled him to an exceptionally lenient sentence until *O'Dell*, he did argue his age justified a sentence at the bottom of the range. His argument was rejected. The sentencing court had no cause to consider the disavowed portion of *Ha'mim*, making the applicability of *O'Dell* immaterial.[4]

*O'Dell* will be material for others, and I hope *O'Dell*'s significance will become clear to the court before irreparable damage is done. Since *O'Dell* is a significant and retroactive change in the law, but not material to Light-Roth's conviction, I concur in result only.

---

[4] A prudent option would be to decide this case on materiality, and leave the question of *O'Dell*'s significance for another day. I regret the majority's decision not to do so.

González, J.