IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| THE STATE OF WASHINGTON, | ) | No. 78551-6-I |
| | ) | |
| Appellant/Cross-Respondent, | ) | DIVISION ONE |
| | ) | |
| | ) | UNPUBLISHED OPINION |
| v. | ) | |
| | ) | |
| LOUIS GUSWALTER PARKER, | ) | |
| | ) | |
| Respondent/Cross-Appellant. | ) | |
| | ) | FILED: March 30, 2020 |

HAZELRIGG, J. — Louis Guswalter Parker was sentenced in 2010 for murder in the second degree with a mandatory firearm enhancement. Parker was 19 at the time he committed the crime and his youth was not presented as a mitigating factor at sentencing. In 2017, this court published In re Pers. Restraint of Light-Roth[1] which made clear that the analysis of State v. O'Dell[2] was retroactive, could be material to a young defendant's sentence, and constituted a significant change in the law. Based on these legal developments, Parker brought a collateral attack on his sentence for which the superior court granted a hearing and eventually proceeded with resentencing. After Parker was resentenced, the Supreme Court overruled the prior Light-Roth decision.[3] The State appealed in Parker's case,

---

[1] 200 Wn. App. 149, 401 P.3d 459 (2017), rev'd, 191 Wn.2d 328, 422 P.3d 444 (2018).
[2] 183 Wn.2d 680, 358 P.3d 359 (2015).
[3] See, In re Pers. Restraint of Light-Roth, 191 Wn.2d 328, 422 P.3d 444 (2018).

arguing that his collateral attack was untimely and his resentencing hearing was improper. Parker cross-appealed, challenging the use of his juvenile convictions in determining his offender score. We reject that argument and because the superior court resentenced Parker based on binding case law at the time of motion, we affirm.

FACTS

Louis Parker was convicted of second degree murder with a firearm enhancement and unlawful possession of a firearm in the first degree in 2010 for the shooting death of his girlfriend. Parker was 19 years old at the time the crime was committed. At his original sentencing hearing, Parker's offender score was determined to be 10 based on prior juvenile convictions. Though Parker's youth was discussed during the sentencing, it was not expressly raised by the defense as a mitigating factor. The court imposed a sentence at the high end of the standard range and a mandatory consecutive 60 month term for the firearm enhancement; the total sentence imposed was 457 months.

Subsequent to Parker's original sentencing after trial, the Supreme Court decided State v. O'Dell, which held that in particular cases, the youth of the offender at the time of the crime could be a substantial and compelling factor to justify a sentence below the standard range. 183 Wn.2d 680, 358 P.3d 359 (2015). In 2017, this court decided In re Pers. Restraint of Light-Roth, which clarified that O'Dell was a significant change in law that could be material to a defendant's sentence and applied retroactively. 200 Wn. App. 149, 401 P.3d 459 (2017), rev'd, 191 Wn.2d 328, 422 P.3d 444 (2018). Following these decisions, in December

2017, Parker filed a motion for relief from judgment contending he was entitled to resentencing pursuant to Miller v. Ala., 567 U.S. 460, 132 S.Ct. 2455 (2012), and O'Dell. The State responded that the motion was an untimely collateral attack.

The trial court granted Parker's motion, relying on Light-Roth to conclude that O'Dell was a significant change in law rendering Parker's collateral attack timely. In 2018, Parker was resentenced within the standard range to a term of 360 months. This sentence, like the original, included 60 additional months for the firearm enhancement, which runs consecutive to the standard range sentence. The State appealed the order vacating Parker's judgment and sentence. Parker cross-appealed, asserting that the use of convictions that occurred when he was 14 years old for purposes of calculating his offender score in the instant case results in an unconstitutionally cruel sentence.

ANALYSIS

I.    Scope of the State's Ability to Appeal

Parker challenges the State's ability to appeal in this case. We find the State's appeal proper under RAP 2.2(b)(3). The State's ability to appeal in a criminal case is more limited than that of a defendant. However, RAP 2.2(b)(3) expressly allows the State to appeal a trial court's "order arresting or vacating a judgment." A recent opinion by this court addressing a case in a similar posture provides, "[i]f a court grants a CrR 7.8(b) motion for relief from judgment by amending the judgment and sentence, the State has the right to appeal under RAP 2.2(b)(3)." State v. Waller, No. 79793-0-I, slip op. at 13 (Wash. Ct. App. Feb. 24, 2020), http://www.courts.wa.gov/opinions/pdf/797930.pdf. In Waller, the State

appealed the court's grant of the defendant's CrR 7.8(b) motion which may have resulted in vacation of the judgment, however while the trial court did consider the arguments of the parties on the CrR 7.8(b) motion, it ultimately did not conduct a resentencing hearing after initially ordering one. Id. at 9-10, 13.

Here, Parker's CrR 7.8(b) motion did result in vacation of the judgment and amendment of his sentence. The order entered after Parker's resentencing expressly states, "IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the Judgment and Sentence entered July 2, 2010 and filed July 6, 2010 is hereby vacated." Thus, the State is appealing the vacation of Parker's original judgment and sentence which flowed from the court's grant of Parker's collateral attack. As such, the State's appeal falls within the scope of RAP 2.2 and is properly before us.

II.     Timeliness of Parker's Collateral Attack

The State contends that Parker's CrR7.8(b) motion, which resulted in the vacation of the judgment, was untimely pursuant to RCW 10.73.090 and thereby improper based on our Supreme Court's opinion in Light-Roth. That opinion was published subsequent to Parker's motion and resentencing. By holding a new sentencing hearing where Parker's youthfulness would be considered as a potential mitigating factor when he had not argued such during his original sentencing in 2010, the trial court acted in accordance with binding legal precedent at the time.

The superior court did not improperly grant Parker's motion for an amended sentence based on RCW 10.73.100(6). Parker's motion was based on RCW

10.73.100 and CrR 7.8, arguing that Light-Roth entitled him to a resentencing hearing where youthfulness could be considered as a mitigating factor. This court's Light-Roth opinion provided that O'Dell was a significant change in the law and applied retroactively, allowing the superior court to make a clear determination that the motion was not time-barred under RCW 10.73.090 since it fell within the exception contained in RCW 10.73.100(6). Light-Roth, 200 Wn. App. at 161-63. After ruling that Parker's motion was not time-barred, the superior court found that he made a substantial showing that youthfulness had not been considered as a mitigating factor at his original sentencing hearing, thereby entitling him to relief under Light-Roth. The court properly granted a resentencing hearing as Parker fell within the RCW 0.73.100(6) exception to the one-year time bar for collateral attack on his sentence.

III.     Resentencing Hearing to Consider Youthfulness as a Mitigating Factor

Beyond the timeliness of Parker's petition, the State also challenges the court's grant of Parker's CrR 7.8 motion contending that O'Dell did not constitute a significant change in law. This court reviews a trial court's ruling on a CrR 7.8 motion for abuse of discretion. State v. Olivera-Avila, 89 Wn. App. 313, 317, 949 P.2d 824 (1997). At the time the motion was considered, this court's Light-Roth opinion "conclude[d] that O'Dell announced a significant change in the law." 200 Wn. App. at 160. This was because prior to O'Dell, sentencing courts were "effectively prevented" from "considering whether a young adult defendant's age diminished his or her culpability unless something else tied the defendant's youth to the crime itself." Id. O'Dell approved of a court's contemplation of a defendant's

youth and immaturity. 183 Wn.2d at 698-99. The Light-Roth opinion at the time explicitly provided that the significant change of law announced in O'Dell was retroactive as it applied a new interpretation to the Sentencing Reform Act's[4] statutes RCW 9.94A.535(1) and 9.94A.535(1)(e). 200 Wn. App. at 160-61.

This first Light-Roth opinion held that the significant change in the law was material to Light-Roth's sentence. Light-Roth was 19 years old, convicted of second degree murder, and argued for a low to mid-range sentence but did not request an exceptional downward departure based on his youthfulness. Id. at 152-53. In the current case, the superior court determined that the facts in Light-Roth were analogous to Parker's case. This similarity allowed for the superior court to determine that O'Dell was a significant change in the law at the time and was material to Parker's sentence. Parker was 19 years old at the time he committed the crime of murder in the second degree and during his original sentencing hearing, counsel did not argue for an exceptional downward sentence, nor was youthfulness expressly raised as mitigation.

"It is well established that the court has the authority under CrR 7.8(b) to vacate a judgment and amend an erroneous sentence." Waller, slip op. at 13. At the time the superior court granted Parker's motion for resentencing, the law was clear as to how O'Dell applied to Parker's case. That clarity from this court's Light-Roth opinion provided the superior court with the authority to grant Parker's otherwise untimely motion for resentencing based on the exception within RCW 10.73.100(6). The only remaining question was whether O'Dell was material to

---

[4] Chapter 9.94A RCW.

Parker's sentence. The trial court here determined that "Light-Roth is absolutely on point" and therefore granted the motion for reconsideration of Parker's original sentence.

Parker's amended sentence was filed on June 20, 2018. Our Supreme Court later overturned this court's Light-Roth opinion on August 2, 2018. However, the new sentence imposed at Parker's June hearing is not specifically at issue in this appeal, nor is the consideration of Parker's youthfulness at the time of the offense as a potentially mitigating factor. The Supreme Court did not reject the proposition that sentencing courts could consider youthfulness in contemplating sentencing under O'Dell. The issue here is whether the vacation of Parker's judgment and sentence is valid. At all of the critical dates during Parker's reconsideration proceedings, this court's Light-Roth opinion was binding authority on the superior court. As the court noted, stare decisis required the resentencing given the way O'Dell was interpreted at the time. Our Supreme Court's later Light-Roth decision displacing this court's interpretation did not clarify whether it functioned retroactively.

Statutes are presumed not to be retroactive. In re Carrier, 173 Wn.2d 791, 809, 272 P.3d 209 (2012). Here, the statute itself did not change, but the interpretation (Light-Roth) of how an interpretation (O'Dell) of the manner by which that statute functions did change, twice; first by this court and then by our Supreme Court. At all periods during Parker's resentencing, from the initial motion through the vacation of the original sentence and entry of the new judgment and sentence order, this court's Light-Roth opinion was binding case law.

To argue that the trial courts should not rely on the state of the law at the time of their ruling because it may change in the future, would lead to problematic results and leave defendants such as Parker in an unsettling situation. "The law must be reasonably certain, consistent, and predictable so as to allow citizens to guide their conduct in society . . . and to allow trial judges to make decisions with a measure of confidence." State v. Stalker, 152 Wn. App. 805, 810-11, 219 P.3d 722 (2009) (internal citation omitted). "'Without stare decisis, the law ceases to be a system.'" Id. at 811 (quoting State ex rel. Wash. Fin. Comm. v. Martin, 62 Wn. 2d 645, 665 384 P.2d 833 (1963)). The State's arguments against Parker's new sentence all hinge on the timeliness of his collateral attack. The trial court did not abuse its discretion in granting Parker's motion as an exception to the time-bar on collateral attacks and the court's imposition of a standard range sentence was proper.

IV.   Denial of State's Motion to Transfer Parker's CrR 7.8.(b) Motion as a Personal Restraint Petition

The State reiterates its argument that Parker's motion should have been transferred to this court as a personal restraint petition. Prior to appeal, this specific challenge was raised in Division I and twice denied. The State filed an interlocutory appeal in February 2018 arguing that the court's grant of the motion for resentencing was improper and advanced an argument that Parker's motion should have been transferred to this court as a personal restraint petition. A commissioner of this court issued a ruling which rejected that argument on April 6, 2018. The State then brought a motion to modify the ruling which was denied by

a panel of judges on April 27, 2018. The State has now raised the same argument for a third time in its briefing. We decline to take it up as we find it is improper under RAP 12.7 given that a final decision was already issued on this matter.

V. Calculation of Parker's Offender Score under the Sentencing Reform Act

On cross-appeal, Parker asserts that the method by which the Sentencing Reform Act (SRA) calculates offender scores, utilizing juvenile offenses, to elevate the score on adult sentences constitutes cruel and unusual punishment. The superior court followed the procedures set out in the SRA when it calculated Parker's offender score and properly included his juvenile convictions. Parker offers no authority to justify the recalculation of his offender score in the manner proposed. Parker did not raise this argument at either sentencing hearing, however it is proper for us to consider the contention since it is being raised on appeal as manifest constitutional error.

Under RAP 2.5(a)(3), a party may raise "manifest error affecting a constitutional right" for the first time on appeal. In State v. A.M., the Washington Supreme Court addressed the threshold determination of whether RAP 2.5(a)(3) allows for review of an error affecting a constitutional right not preserved by objection in the court below. 194 Wn.2d 33, 38-40, 448 P.3d 35 (2019). A.M. held that RAP 2.5(a)(3) review requires a plausible showing by the appellant that the error has practical and identifiable consequences in the trial of the case. Id. at 38. This is a unique standard from the review of the actual alleged constitutional violation, as RAP 2.5 "serves a gatekeeping function." Id. at 39 (citing State v. Lamar, 180 Wn.2d 576, 583, 327 P.3d 46 (2014)).

If the offender score calculation was found to be unconstitutional it would have practical and identifiable consequences for Parker at the trial court since his standard range would be lowered. This court reviews a statute's constitutionality de novo. State v. Bassett, 192 Wn.2d 67, 77, 428 P.3d 343 (2018). The statute is presumed constitutional and the challenger bears the burden to prove otherwise beyond a reasonable doubt. Id.

Parker does not argue that the SRA was incorrectly applied; he brings a categorical challenge to the constitutionality of the manner by which the SRA calculates juvenile offenses in one's offender score. The Supreme Court has established that categorical challenges based on characteristics of youth should be analyzed through a two prong test. First, "whether there is a national consensus against" increasing an individual's sentence based on prior juvenile offenses by utilizing "objective indicia of society's standards, as expressed in legislative enactments and state practice." Id. at 85 (quoting Graham v. Fla., 560 U.S. 48, 61, 130 S. Ct. 2011 (2010) (internal citation omitted)). Second, we exercise our independent judgment in considering "'the culpability of the offenders at issue in light of their crimes and characteristics, along with the severity of the punishment in question' and 'whether the challenged sentencing practice serves legitimate penological goals.'" Id. at 87 (quoting Graham, 650 U.S. at 67). The penological goals to be considered are that of "retribution, deterrence, incapacitation, and rehabilitation are served by this sentence." Id. at 88.

The Supreme Court considered a similar issue in State v. Moretti last year that can offer guidance here in light of the Bassett factors. 193 Wn.2d 809, 814,

446 P.3d 609 (2019). Moretti examined three consolidated cases where defendants had been sentenced under the Persistent Offender Accountability Act (POAA) as adults, but at least one of the most serious, or "strike," offenses that resulted in the finding that the defendant was a persistent offender had been committed as a young adult offender. Id. The court held that the inclusion of these offenses, where youthfulness may have been a factor in the behavior underlying the crime of conviction, in the offender score calculation for purposes of imposing a life sentence without the possibility of parole was not unconstitutional. Id. at 834. More critically for Parker's categorical challenge, the court expressly reviewed case law across a number of jurisdictions and did not find that there was a national consensus against using a crime committed as a juvenile or young adult to enhance the sentence of an adult who continued to offend. Id. at 821-23. This lack of national consensus, though not dispositive as to whether the punishment is cruel, is afforded great weight. Id. at 823.

This recent finding in Moretti that no national consensus exists regarding counting youthful offenses to enhance an adult's sentence is at odds with Parker's burden to prove a categorical challenge to the calculation of an offender score under the SRA. See Id. at 821-22. Furthermore, Parker has not met his burden as to the second prong as he has failed to even address the penological goals served by the SRA calculation of offender scores utilizing juvenile offenses as encompassed in the second prong of the Bassett test. He instead focuses on reduced culpability, which could arguably play into a larger exploration of the penological goals of the SRA. However, Bassett makes clear that this is a critical

piece of the analysis and we are unable to fully address the question he raises absent argument on all aspects of the applicable legal test.

We reject Parker's assertion that the inclusion of his juvenile convictions in calculating his offender score under the SRA results in an unconstitutional sentence and affirm the superior court's resentencing under authority of the binding case law at the time of Parker's motion.

Affirmed

WE CONCUR: