IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON, Respondent/Cross Appellant, v. THEODORE FRANCIS STEWART, Appellant/Cross Respondent. | No. 87206-1-I DIVISION ONE UNPUBLISHED OPINION |

HAZELRIGG, A.C.J. — Theodore Francis Stewart appeals from his 2023 resentencing on his 2006 conviction for murder in the first degree with a deadly weapon and asserts that the trial court failed to meaningfully consider youthfulness as a mitigating factor that supported an exceptional sentence below the standard range. The State cross appeals and claims that the process applied to Stewart's case amounted to an untimely collateral attack and Stewart was not eligible for resentencing. A trial court lacks authority to resentence a defendant absent a specific legal basis that allows the court to reopen a judgment and exercise its sentencing discretion anew.[1] An agreement between the parties that resentencing is appropriate, or a request for resentencing to which there is no objection, does not eliminate the need for the authority to set aside a final judgment. Because the trial court here had neither inherent authority nor authority under statute or decisional law, it erred when it resentenced and amended Stewart's final judgment

---

[1] *State v. Shove*, 113 Wn.2d 83, 87-88, 776 P .2d 132 (1989).

and sentence (J&S). We reverse the amended J&S and remand for the trial court to vacate it and reinstate the original 2006 J&S. We dismiss Stewart's appeal, as our resolution of the State's appeal renders his appeal moot.

FACTS

In 2006, a jury convicted Theodore Stewart of murder in the first degree while armed with a deadly weapon. Stewart, together with an accomplice, committed the crime in 2001, just days before his 21st birthday. The court imposed a 384-month (32 year) standard range sentence. Division Three of this court affirmed Stewart's conviction on appeal and the mandate terminating review was issued in 2008. *See State v. Stewart*, noted at 142 Wn. App. 1040 (2008).

More than a decade later, the Office of Public Defense (OPD) and Department of Corrections (DOC) identified Stewart as a potential candidate for resentencing in the wake of changes in the law precipitated by certain Washington Supreme Court decisions, including *In re Personal Restraint of Monschke*, 197 Wn.2d 305, 482 P.3d 276 (2021) (plurality opinion), which addressed the constitutionality of certain mandatory life without possibility of parole sentences. A Spokane County Superior Court judge appointed counsel for Stewart ex parte. Appointed counsel filed a notice of appearance in September 2021.

In February 2022, the defense filed a motion to transport Stewart to the county jail "for resentencing." In a single conclusory sentence, the motion asserted that Stewart was "eligible to be resentenced based on the mandatory youthful offender considerations established" by *State v. Houston-Sconiers*, 188 Wn.2d 1, 391 P.3d 409 (2017), a case involving discretion in sentencing juvenile defendants,

and *Monschke*. Specifically, the defense contended that *Monschke* extended *Houston-Sconiers*' mandate to consider factors associated with youth when sentencing individuals up "to 20 years old."

At a March 25, 2022 status conference, defense counsel confirmed the request for "possible resentencing" based on *Houston-Sconiers* and *Monschke*. Defense counsel noted that the State did not appear to object and its agreement to transport would not "preclude any argument the State would like to make later." The State agreed on the record that Stewart was entitled to be resentenced.[2] The same day, the trial court signed an agreed order to transport Stewart for "disposition/resentencing." A few days later, the court signed a second order of transport proposed by the State, adding language requested by the DOC to allow Stewart's later return to its custody without further court order.

In August 2022, the parties agreed to a continuance because the defense expert needed more time to prepare for a youthful offender resentencing. They agreed to a second continuance a few months later. After a February 2023 status conference, the court issued a scheduling order that set the briefing schedule for resentencing.

On March 3, 2023, Stewart filed his sentencing brief. In light of "changes in caselaw and a greater understanding now of the science of brain development," he asked the court to exercise its discretion to impose a sentence below the standard range. Defense counsel highlighted Stewart's age at the time of the crime, difficult upbringing, a traumatic brain injury, and other traumatic events.

---

[2] The prosecutor later explained that he "erroneously" believed at the time that *Monschke* applied to "all youthful offenders."

Stewart's attorney also suggested that Stewart was influenced to commit the crime by his codefendant who was the "primary instigator" and "more culpable." The defense pointed to "affirmative steps toward rehabilitation" during Stewart's 18 years of incarceration. Stewart also relied on a forensic evaluation wherein the evaluator concluded there were "several areas in which Mr. Stewart's youthfulness and impaired brain functionality at the time of the index crime would have had a substantial impact on his behavior regarding index events."

Then, for the first time, the State took the position that Stewart's request for resentencing was, in essence, an untimely collateral attack on his J&S. The State argued that neither *Houston-Sconiers* nor *Monschke* affected Stewart's sentence because he was not a juvenile defendant, convicted of aggravated murder, or sentenced to life without the possibility of parole. The State urged the trial court to transfer the matter to the court of appeals for consideration as a personal restraint petition (PRP), as required by CrR 7.8(c)(2) (postconviction motion filed in superior court must be transferred to court of appeals unless it is both timely filed and petitioner makes a substantial showing of entitlement to relief). In reply, Stewart claimed the State's objection to resentencing was untimely, a violation of the trial court's order that required a substantive sentencing memorandum, and an improper attempt to relitigate the March 2022 order of transport, which implicitly determined Stewart's eligibility for resentencing.

When the parties appeared before the court on April 14, 2023, the previously scheduled resentencing date, the State maintained its position that the trial court had no authority to conduct a resentencing and was required to transfer

- 4 -

the matter. Stewart likewise continued to argue that the question of his eligibility for resentencing was not properly before the court. Defense counsel claimed the State waived any objection by failing to seek review or reconsideration of the order of transport and failing to raise any objection in the months that followed when Stewart was awaiting resentencing. The State responded that there had been no prior, logical opportunity to object in the absence of a formal motion for resentencing and no court had ruled on Stewart's entitlement to resentencing.

The trial court reviewed the procedural posture, noting that the orders of transport were agreed orders that identified resentencing as the reason for the transport. The court ruled that any objection to resentencing was waived because the State did not seek review or reconsideration of any prior order and raised no objection to the purpose of the hearing—resentencing—until its response to the defense sentencing brief.

The court proceeded to resentence Stewart. In accordance with its briefing, the defense urged the court to impose a new sentence of approximately 22 years, based on Stewart's particular circumstances and in consideration of factors associated with his youth, such as "immaturity, impetuosity, failure to appreciate risk and consequences." The State declined to make a sentencing recommendation.

The court expressly acknowledged its consideration of the arguments and materials submitted by the defense and specifically discussed the forensic evaluation. The court also acknowledged its discretion and consideration of Stewart's youthfulness at the time of the crime. Nevertheless, the court found no

"mitigating factors to justify any type of exceptional sentence below the standard range," observing that Stewart was almost 21 years old at the time of the crime, the admitted facts did not suggest a crime of impulse, and Stewart committed additional crimes after the murder and before his arrest. Accordingly, the court declined to alter the length of the sentence.

The State filed a motion to reconsider. In addition to restating its previous objections, the State pointed out that while the court indicated that it would impose a new J&S, it had not vacated the original 2006 J&S. The trial court denied the motion to reconsider, but also entered an order stating that the 2023 J&S included a "scrivener's error" because it omitted language to indicate that the new judgment was "amended." The court authorized the clerk to withdraw the 2023 J&S from the file so the court could add handwritten notations that both the J&S and warrant of commitment were "amended."

Both Stewart and the State timely appealed the 2023 amended J&S.[3] The case was transferred to this division for resolution.

ANALYSIS

Relying primarily on cases involving the sentencing of juveniles, *see, e.g.,* *Miller v. Alabama*, 567 U.S. 460, 470, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012) (mandatory life without parole sentences for juvenile defendants violate the Eighth Amendment to the United States Constitution), *State v. Haag*, 198 Wn.2d 309, 325, 495 P.3d 241 (2021) (court erred by focusing on retributive, over mitigating,

---

[3] Stewart did not file a brief in response to the State's appeal or a reply to the portion of the State's brief responding to his appeal.

factors at resentencing hearing), Stewart argues in briefing that the trial court failed to "meaningfully consider" his request for an exceptional mitigated sentence based on youthful features or adequately explain its reasoning.

Meanwhile, the State's cross appeal raises the arguments it made in the trial court: the judge lacked authority to conduct a resentencing and Stewart's request for resentencing was, in effect, an untimely and successive collateral attack, which the trial court was required to transfer under CrR 7.8(c)(2). As to the merits of Stewart's appeal, the State contends that since the trial court appreciated its discretion and did not categorically refuse to consider an exceptional sentence on untenable grounds, Stewart's standard range sentence is not subject to appeal.

I.    Trial Court Lacked Authority to Conduct Resentencing

Before we address the particular facts, we review the general principles of finality that govern our analysis. As our Supreme Court recently observed, "[w]e have long held that outside of a direct appeal or timely collateral attack," sentences under the Sentencing Reform Act of 1981 (SRA),[4] "'may be modified only if they meet the requirements of the SRA provisions relating directly to the modification of sentences.'" *State v. Hubbard*, 1 Wn.3d 439, 445, 527 P.3d 1152 (2023) (quoting *State v. Shove*, 113 Wn.2d 83, 89, 776 P.2d 132 (1989)). *Shove*, the "leading case" governing the modification of SRA sentences, is instructive. *Id*. at 448. Shove was sentenced to one year of "partial confinement at a work release center." *Shove*, 113 Wn.2d at 85. After five months, Shove petitioned the court to modify her sentence based on concerns that she would be unable to meet her

---

[4] Ch. 9.94A RCW.

financial obligations if not "immediately released." *Id*. In particular, a corrections officer expressed concern about Shove's ability to maintain the "demanding schedule" that allowed her to pay the fees required to participate in work release, and noted that removal from the program would likely result in the "collapse" of her family-run business and inability to pay restitution. *Id.* The trial court amended the original J&S and imposed an "exceptional" suspended sentence of 10 years, with 10 years of probation. *Id.*

Reversing the order modifying Shove's sentence, the Supreme Court explained that determinate sentences are "ascertained at the time of sentencing," and not generally "subject to later change." *Id.* at 86. Because the "SRA permits modifications of sentences only in specific, carefully delineated circumstances," none of which were present in Shove's case, the trial court lacked authority to amend the J&S. *Id.* The court held that inherent authority to vacate or alter a final criminal or civil judgment exists "only in those limited circumstances where the interests of justice most urgently require." *Id.* at 88. In so holding, the court explicitly rejected "[t]he claim that the power to set a sentence carries with it the power later to modify that sentence" because such a claim "ignores the importance of finality in rendered judgments." *Id*. The court additionally emphasized that "[m]odification of a judgment is not appropriate merely because it appears, wholly in retrospect, that a different decision might have been preferable." *Id*.

Whether a trial court has exceeded its statutory authority under the SRA is an issue of law, which we review de novo. *State v. Hale*, 94 Wn. App. 46, 54, 971 P.2d 88 (1999). A trial court may exercise discretion in sentencing only where the

SRA authorizes discretion. *Shove*, 113 Wn.2d at 89 n.3. "When a trial court exceeds its sentencing authority under the SRA, it commits reversible error." *Hale*, 94 Wn. App. at 53.

Turning to the specifics of this case, neither *Houston-Sconiers* nor *Monschke* authorized the court to set aside the judgment and impose a new sentence. The holding of *Houston-Sconiers* is expressly limited to juveniles. 188 Wn.2d at 21 ("[S]entencing courts must have complete discretion to consider mitigating circumstances associated with the youth of any *juvenile defendant*.") (emphasis added); *see also State v. Mandefero*, 14 Wn. App. 2d 825, 831-32, 473 P.3d 1239 (2020) (*Houston-Sconiers* does not apply to individuals who were over 18 at time of offense). *Monschke* was likewise limited to those convicted and sentenced for aggravated murder in the first degree who were facing mandatory sentences of life without the possibility of parole. *See In re Pers. Restraint of Kennedy*, 200 Wn.2d 1, 24, 513 P.3d 769 (2022) (*Monschke* immaterial because defendant was not convicted of aggravated murder or sentenced to mandatory life without parole).

It is undisputed that Stewart was not a juvenile at the time of the murder and was not convicted of aggravated murder or subject to a mandatory sentence of life without the possibility of parole. As such neither *Houston-Sconiers* nor *Monschke* is material to Stewart's sentence and any claim for collateral relief based on those decisions is time barred. *See* RCW 10.73.100(7) (petitioner may overcome one-year time bar if there has been a substantial change in the law that is material and applies retroactively); *In re Pers. Restraint of Ali*, 196 Wn.2d 220,

234-35, 474 P.3d 507 (2020) (change in law material if it "would affect a materially determinative issue"). Because Stewart was a youthful, non-juvenile defendant, the sentencing court had discretion but was not required to consider youth as a mitigating factor, and there has been no substantial, retroactive change with respect to the law that applied at Stewart's 2006 sentencing. *See State v. O'Dell*, 183 Wn.2d 680, 696, 358 P.3d 359 (2015); *In re Pers. Restraint of Light-Roth*, 191 Wn.2d 328, 338, 422 P.3d 444 (2018).

When it determined that it had authority to resentence Stewart, the trial court did not address *Monschke* or *Houston-Sconiers*, much less conclude that those decisions implicated the constitutionality of Stewart's sentence. In fact, neither the court nor any party referenced a statutory basis that authorized resentencing. *Cf. In re Postsentence Rev. of Cage*, 181 Wn. App. 588, 594, 326 P.3d 805 (2014) (DOC, not trial court, had express statutory authority to grant furlough). Instead, the court ruled that the order of transport, entered on the parties' stipulation and without legal analysis, conclusively determined eligibility for resentencing. Further, the court declined to revisit that issue because the State did not seek review or otherwise challenge the transport order. The trial court also relied on the fact that despite prior opportunities to do so, the State failed to lodge a timely objection and thereby waived its challenge to the court's authority to resentence Stewart.

However, none of these reasons supplied a legal basis to resentence Stewart and "amend" his final J&S. In the "Facts" section of his February 17, 2022 motion to transfer, defense counsel boldly asserted, "Stewart is eligible to be resentenced based on the mandatory youthful offender considerations established

in *State v. Houston-Sconiers*, 391 P.3d 409 (Wash. 2017) and *In Re Matter of Monschke*, 197 Wn.2nd 305 (2021)." The court does not appear to ever have addressed that this statement is not a fact, or even a true conclusion of law as it was not reached by a judge, but merely the basis on which the motion to transport was premised. Again, the record suggests that the determination of Stewart's *possible* eligibility for resentencing was made by OPD and DOC. While the order granting the motion to transport Stewart characterized the purpose of the transfer as "disposition/resentencing," it did not include any findings or identify authority to set aside Stewart's 2006 judgment. Notably, the parties' agreement to transport expressly did not preclude the State from raising "any argument" at a later time. Even if the March 2022 order of transport was an implicit ruling that *Monschke* required resentencing, there is no reason the trial court was unable to reconsider that ruling after subsequent caselaw clarified the scope of *Monschke's* holding.

While it appears that the parties initially agreed that resentencing was appropriate, there is nothing in *Shove* or other cases involving authority to modify final SRA sentences to suggest that a stipulation, waiver, or even a party's invited error eliminates the need for a specific legal basis to disturb or alter a final J&S. This is why, for instance, it was not relevant in *Shove* that a corrections officer supported the defendant's request to adjust her sentence. 113 Wn.2d at 85. It also explains why the Supreme Court was not persuaded in *Hubbard* by the State's assertion that postjudgment modification of court-imposed conditions of custody based on changed circumstances was apparently "'routine around the State.'" 1 Wn.3d at 446.

In the absence of authority to conduct a resentencing and amend the final judgment, under the SRA or any other law, the trial court committed reversible error.

II.    Defense Motion to Transfer Was Untimely Collateral Attack

Additionally, as the State observes, when Stewart sought to change the terms of his 2006 sentence, he was presenting a collateral attack on that J&S. *See* RCW 10.73.090(2) ("[A]ny form of postconviction relief other than a direct appeal" is a "'collateral attack.'").  Collateral challenges must be brought within "one year after the judgment becomes final if the judgment and sentence is valid on its face and was rendered by a court of competent jurisdiction," unless the challenge is solely based on a statutory exception to the time bar set forth in RCW 10.73.100. RCW 10.73.090(1); *In re Pers. Restraint of Coats*, 173 Wn.2d 123, 131, 267 P.3d 324 (2011).  As noted, CrR 7.8(c)(2) requires a collateral challenge filed in superior court to be transferred to the court of appeals unless it is both timely filed and the petitioner makes a substantial showing of entitlement to relief.

Because the trial court failed to properly follow these procedures, the State proposes in briefing that we apply the "usual" and judicially efficient remedy of converting Stewart's direct appeal to a PRP, and dismissing it as successive and untimely.  *See State v. Smith*, 144 Wn. App. 860, 863-64, 184 P.3d 666 (2008) (discussing trial court's improper dismissal of a CrR 7.8 motion).[5]  The State also

---

[5] This court declined to convert the appeal to a PRP in *Smith* because doing so would subject the petitioner to the successive petition rule without allowing him to choose whether he wanted to pursue a PRP.  144 Wn. App. at 864.  This concern is not present here because Stewart has already previously filed several PRPs and is already subject to the successive petition rule. *See* Nos. 28247-3-III, 29262-2-III, 30941-0-III, and 32682-9-III.

recognizes that we may achieve the same result by remanding to the superior court with instructions to transfer the collateral attack to this court. *See In re Pers. Restraint of Ruiz-Sanabria*, 184 Wn.2d 632, 642, 362 P.3d 758 (2015) (remanding where unclear whether superior court engaged in proper analysis under CrR 7.8(c)(2)).

However, it is not clear that converting a direct appeal to a PRP is the "usual" or correct remedy where the parties appeal from an amended J&S, not from an order erroneously resolving a specific postconviction motion. The State identifies no cases, and we are unaware of any, in which this court has converted a timely direct appeal from a J&S to a PRP, or remanded for the trial court to transfer such an appeal. As the State acknowledges, neither of these suggested forms of relief will, as a practical matter, address the 2023 amended J&S, entered without authority, that is currently in place of the effectively vacated original 2006 J&S. *See State v. McWhorter*, 2 Wn.3d 324, 327, 535 P.3d 880 (2023) ("By the act of ordering a complete resentencing hearing at which the superior court would exercise its sentencing discretion anew, the court effectively vacated the original judgment and sentence.").

While we agree that the request for resentencing should have been treated as an untimely collateral attack and transferred to this court as a PRP, we conclude that the appropriate remedy in these circumstances is to reverse the 2023 J&S, and direct the superior court to vacate it and reinstate the original 2006 judgment. *See State v. Molnar*, 198 Wn.2d 500, 511-12, 497 P.3d 858 (2021) (noting "exceptional" and "unique" circumstances, Supreme Court addressed merits and

reinstated superior court's order, after trial court improperly denied motion for resentencing instead of transferring matter as untimely collateral attack and this court reversed).

Because we reverse the 2023 amended J&S based on the arguments advanced by the State, Stewart's appellate arguments directed at that judgment are moot and we decline to reach them. *See State v. Booker*, 22 Wn. App. 2d 80, 83, 509 P.3d 854 (2022) (explaining issue is moot "if we can no longer provide effective relief for the claimed legal error" and appeals raising "only moot issues" are generally dismissed). Stewart's appeal is dismissed as moot.

Reversed and remanded.

WE CONCUR: