**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

FILED
SUPREME COURT
STATE OF WASHINGTON
9/8/2022
BY ERIN L. LENNON
CLERK

# THE SUPREME COURT OF WASHINGTON

| | | |
|---|---|---|
| In re Personal Restraint Petition of | ) | **ORDER DENYING MOTION FOR RECONSIDERATION** |
| | ) | |
| ANDREW KENNEDY, | ) | |
| | ) | No. 99748-9 |
| Petitioner. | ) | |
| | ) | |
| | ) | |

The Court considered the Petitioner's "MOTION TO RECONSIDER".

It is hereby

ORDERED:

That the motion for reconsideration is denied.

DATED at Olympia, Washington this 8th day of September, 2022.

For the Court

_González C.J._
CHIEF JUSTICE

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERK'S OFFICE
SUPREME COURT, STATE OF WASHINGTON
JULY 28, 2022

*González, C.J.*
CHIEF JUSTICE

THIS OPINION WAS FILED
FOR RECORD AT 8 A.M. ON
JULY 28, 2022

ERIN L. LENNON
SUPREME COURT CLERK

## IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | |
|---|---|
| In re Personal Restraint Petition of<br><br>ANDREW KENNEDY,<br><br>                    Petitioner. | NO. 99748-9<br><br>EN BANC<br><br>Filed: <u>July 28, 2022</u> |

STEPHENS, J.—When Andrew Kennedy was 19 years old, he killed his cousin's 11-month-old daughter while she was in his care. Following a bench trial in 2007, the court convicted Kennedy of homicide by abuse and sentenced him to 380 months in confinement. Kennedy's judgment and sentence became final after direct appeal in 2009. In 2019, he filed this personal restraint petition (PRP) seeking to be resentenced based on "[n]ewly discovered evidence." RCW 10.73.100(1). Kennedy argues that advancements in the scientific understanding of adolescent brain development for young adults since his 2007 sentencing would have probably changed the trial court's discretionary sentencing decision by allowing him to argue for a mitigated sentence based on youthfulness. The Court of Appeals dismissed

*In re Pers. Restraint of Kennedy*, No. 99748-9

Kennedy's PRP as time barred, concluding that scientific evidence supporting such an argument for young adults Kennedy's age was available at the time of sentencing.

After we granted Kennedy's motion for discretionary review, he raised a second argument for relief based on the "significant change in the law" exemption to the time bar. RCW 10.73.100(6). He asks us to conclude that the plurality opinion in *In re Pers. Restraint of Monschke*, 197 Wn.2d 305, 482 P.3d 276 (2021), constitutes a significant and retroactive change in the law that is material to his sentence.

We affirm the Court of Appeals and hold that Kennedy's PRP meets neither exemption to the time bar. While the declaration of Dr. Laurence Steinberg attached to Kennedy's petition identifies recent research that arguably would have strengthened Kennedy's argument for a mitigated sentence based on youth, he could have made his argument at the time of his sentencing and it does not meet the standard for newly discovered evidence. *See In re Pers. Restraint of Light-Roth*, 191 Wn.2d 328, 334-38, 422 P.3d 444 (2018). Kennedy also fails to show that he is entitled to relief based on *Monschke*'s lead opinion, which concluded that a sentence of mandatory life without parole (LWOP) under RCW 10.95.030 for the crime of aggravated first degree murder was unconstitutional as applied to 19- and 20-year-old defendants. Because Kennedy was neither convicted of aggravated first degree murder nor sentenced to mandatory LWOP, Kennedy does not show that any change

2

*In re Pers. Restraint of Kennedy*, No. 99748-9

in the law reflected in *Monschke* is material to his sentence. We therefore dismiss

Kennedy's PRP as time barred. RCW 10.73.090(1).

FACTS AND PROCEDURAL HISTORY

In June 2004, Kennedy became the primary caregiver of his cousin's daughter,

K.S. K.S. was a 10 month-old infant, and Kennedy was her godfather. In the

approximately 2 months she was in his care, Kennedy repeatedly physically abused

K.S. Specifically, the trial court found that Kennedy intentionally caused K.S. to

stop breathing on multiple occasions; broke her left arm; hit her on her arm, causing

bruising; and inflicted multiple head injuries evidenced by subdural bleeding. Based

on the evidence, the trial court found that Kennedy "engaged in a pattern or practice

of physically abusing and/or torturing [K.S.]" in the 2 months she was in his care.

Resp't's Br., App. B (findings of facts (FF) XLVI) (Wash. Ct. App. No. 53360-0-II

(2019)).

On August 4, 2004, K.S. died from a head injury. Kennedy admitted this

occurred when he was alone with the child in his bedroom. Kennedy later confessed

to his wife and family that K.S.'s death had not been an accident, stating he had

"'dark thoughts'" and "he knew he was going to hurt her when he took her into his

bedroom on the night of August 1, 2004." *Id.* at FF XX-XXI. The trial court found

Kennedy killed K.S. when he "intentionally swung her head into a stationary object

3

*In re Pers. Restraint of Kennedy*, No. 99748-9

with violent force." *Id.* at FF XLIII. The trial court further found that Kennedy's killing of K.S. showed an "extreme indifference to the life of [K.S.]." *Id*. at FF XLV. At the time of her death, K.S. was "362 days old, weighed 23 [pounds], and could not walk." *Id*. at FF XLVIII.

The State charged Kennedy with first degree murder and homicide by abuse, and further charged three aggravating factors: (1) that Kennedy knew or should have known K.S. was a particularly vulnerable victim, (2) that Kennedy used a position of trust or confidence, and (3) that Kennedy showed an egregious lack of remorse. *State v. Kennedy*, noted at 150 Wn. App. 1040, 2009 WL 1610171, at *1 (2009) (citing RCW 9.94A.535(3)(b), (n), (q)). Kennedy waived his right to a jury and proceeded to a bench trial. *Id.* at *1-2.

The trial court found him guilty of second degree murder and homicide by abuse, later dismissing the second degree murder conviction due to double jeopardy concerns. The court also found the evidence supported two of the aggravating factors: (1) that Kennedy knew or should have known that K.S. was a particularly vulnerable victim given that she was an infant and could not walk and (2) that Kennedy abused a position of trust or confidence in committing the crime.

Kennedy's standard sentencing range was 240 to 320 months, but the court considered an exceptional upward sentence based on its findings on two of the

*In re Pers. Restraint of Kennedy*, No. 99748-9

aggravating factors. The State recommended an exceptional sentence of 480 months. The prosecutor read a letter to the court from Kennedy's ex-wife stating that the severity of Kennedy's abuse of K.S. intensified as it continued and that Kennedy admitted abusing K.S. because he enjoyed it and "wanted to do it." 17 Verbatim Report of Proceedings (VRP) at 1645. A number of Kennedy's family members spoke in favor of a lower sentence, claiming that Kennedy was innocent, that he loved and cared for K.S., and that he never would have hurt her. In his allocution, Kennedy described K.S. as "a light in my life" and stated, "I've never hit anyone in my life and I will stand very firmly with my not guilty and I refuse to go down without a fight for something I did not do." 17 VRP at 1667.

Kennedy's counsel argued that Kennedy's youth supported a sentence at the low end of the standard range. Although counsel did not argue for an exceptional mitigated sentence, he spoke of the impact a long sentence would have on a young person like Kennedy:

> The other thing to think about with respect to sentencing, I believe to a large degree is Mr. Kennedy's age. At the time this occurred, he is in his early twenties. He is still in the same ball park and we look at the reasons for sentencing. . . .
>
> . . . .
>
> The question then becomes is he going to get out sometime when he is in his forties or is he going to be pushing sixty when he gets out. And, I think it is important to think about the person that we are going to be releasing from our correctional facility in the future, years from now. If someone has to think and ponder and think about the condition

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Kennedy*, No. 99748-9

they are going to be in physically, mentally. What they are going to have left in terms of friends and family that are still alive at the age of sixty when you are still in your twenties that seems bleak. You are picturing something that you really can't even put your head around at that age. And it can become—it can become disparaging . . . . And, it is going to release someone out at that point without really anything much to look forward to and not really any real reason to educate themselves, to rehabilitate themselves, to do the things that they can do while serving their time to improve themselves and step out and say, "I still have half a life left. I still can make something of myself. I can be a productive member of society. I can find a relationship and I can move on with my life.

The penalty that he suffers is going to be significant whether he serves twenty years or forty years but if he gets out after twenty years of serving time, as he walks out of this courtroom, as he goes to Shelton, as he is processed through, he sees a light at the end of the tunnel. There is a reason for him to keep his hope alive, to keep his faith alive, to keep everything that he has with respect to the church and his family intact, maintain relationships and continue to be a healthy individual and try to come out with some sense of ability to pick up pieces and take the half of a life that he has left and make the right decisions to do the things that he needs to do, to pay taxes, to be a productive member o[f] society and presumably a member of his church again. And, I fear that a sentence akin to what the prosecutor is asking for his going to strip him of that, strip his family of that and when there is a release some years from now, the consequences of that doubling of his sentence could be so devastating to him at this point that it doesn't allow him or anyone else the opportunity to recover from that situation and move on. So on behalf of Mr. Kennedy . . . , we are asking that the Court impose the low end of the standard range which again is a significant amount of time.

17 VRP at 1663, 1665-67. At the conclusion of the hearing, the court imposed an

exceptional upward sentence of 380 months of confinement.

Kennedy appealed, arguing primarily that his waiver of the right to a jury trial

was invalid because the trial court did not advise him he was waiving a jury on the

*In re Pers. Restraint of Kennedy*, No. 99748-9

aggravating circumstances. The Court of Appeals rejected Kennedy's arguments and affirmed his judgment and sentence. *Kennedy*, 2009 WL 1610171 at \*3. His judgment and sentence became final in July 2009.

In 2018, Kennedy filed a CrR 7.8 motion seeking resentencing to consider the mitigating qualities of youth in light of Division One's opinion in *In re Pers. Restraint of Light-Roth*, 200 Wn. App. 149, 401 P.3d 459 (2017). In that opinion, the Court of Appeals concluded that *State v. O'Dell*, 183 Wn.2d 680, 358 P.3d 359 (2015), was a significant and retroactive change in law that provided an exemption to the one-year time bar under RCW 10.73.100(6). *Light-Roth,* 200 Wn. App. at 154-63. Kennedy's motion was stayed after this court granted review in *Light-Roth*. We later reversed Division One's decision and concluded that *O'Dell* was not a significant change in the law. *Light-Roth*, 191 Wn.2d at 330.

It appears the trial court never addressed or transferred Kennedy's CrR 7.8 motion, though it was not withdrawn. Instead, in 2019, Kennedy filed this PRP seeking a resentencing hearing to consider the mitigating qualities of youth. His petition argues for an exemption from the one-year time bar based on newly discovered evidence concerning the neurodevelopment of young adults that was not available at the time of his sentencing. RCW 10.73.100(1). In support, Kennedy attaches to his PRP his own declaration and a declaration from Dr. Laurence Steinberg, a developmental psychologist specializing in adolescent brain

7

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Kennedy*, No. 99748-9

development. Dr. Steinberg's declaration traces developments in the understanding of neuroscience of juveniles, as relied on by the United States Supreme Court in holding that adolescents in general have immature characteristics that can render them less culpable and therefore less deserving of the most severe punishments. *See, e.g.*, *Miller v. Alabama*, 567 U.S. 460, 471-75, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012). Dr. Steinberg's declaration identifies research recognizing that the immature characteristics of adolescents can continue until age 21. For example, Dr. Steinberg points to studies showing that juveniles as well as people in their early 20s underestimate risks and negative consequences of their actions, focus more on potential rewards of risky behavior, lack control of their impulses, are less able to consider future consequences, respond worse in emotionally arousing situations, and are more susceptible to peer pressure. Dr. Steinberg concludes that "[r]ecent discoveries in psychological science and in brain science" make clear "that neurobiological and psychological immaturity of the sort that the Supreme Court references in its opinions on the diminished culpability of minors is also characteristic of individuals in their late teens and early 20s." PRP, Decl. of Steinberg at 14 (Wash. Ct. App. No. 53360-0-II (2019)).

To explain how his own youthful characteristics impacted his crime, Kennedy's declaration characterizes his killing of K.S. as resulting from an emotional response. He states he had trouble controlling his emotions when he was

8

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Kennedy*, No. 99748-9

younger: "Growing up, I had difficulty controlling my emotions. I was often anxious and when stressed I would lose control." PRP, Decl. of Kennedy (Wash. Ct. App. No. 53360-0-II (2019)). Contrary to the evidence credited at trial that Kennedy "knew he was going to hurt [K.S.] when he took her into his bedroom on the night of August 1, 2004," Resp't's Br., App. B (FF XX), his declaration states that he did not act with intent, was not thinking, and "just acted like I was on some sort of terrible and harmful auto-pilot." PRP, Decl. of Kennedy (Wash. Ct. App. No. 53360-0-II (2019)). And Kennedy contends that he can better control his emotions and consider the consequences of his actions now that he is older.

The Court of Appeals concluded that Kennedy's proffered evidence did not meet the requirements of the newly discovered evidence exemption in RCW 10.73.100(1), and it dismissed his PRP as time barred. *In re Pers. Restraint of Kennedy*, 16 Wn. App. 2d 423, 480 P.3d 498 (2021). Notably, picking up on a quote in Kennedy's briefing, the court described the newly discovered evidence exception as requiring a showing that new evidence "'(1) will probably change the result of the [sentencing], (2) was discovered since the [sentencing], (3) could not have been discovered before [sentencing] by the exercise of due diligence, (4) is material, and (5) is not merely cumulative or impeaching.'" *Id.* at 428-29 (alterations in original) (quoting *In re Pers. Restraint of Fero*, 190 Wn.2d 1, 15, 409 P.3d 214 (2018)

9

*In re Pers. Restraint of Kennedy*, No. 99748-9

(plurality opinion)).[1]  The court concluded that Kennedy's petition failed the third factor because the argument about mitigating qualities of youth and the science supporting such an argument for young adults was available when Kennedy was sentenced in 2007.  *Id.* at 429.

The Court of Appeals pointed to Dr. Steinberg's declaration, which stated that the research about the mitigating qualities of youth for late adolescents existed as early as 2003.  *Id.* at 429 (quoting PRP, Decl. of Steinberg at 6 (Wash. Ct. App. No. 53360-0-II (2019)).  The court also referenced Kennedy's previous CrR 7.8 motion seeking resentencing based on Division One's decision in *Light-Roth*, which referenced studies and research available at the time of Kennedy's 2007 sentencing. *Id*.  Last, the Court of Appeals emphasized this court's recognition of youth as a potentially mitigating factor in *State v. Ha'mim*, 132 Wn.2d 834, 846, 940 P.2d 633 (1997), and *O'Dell*, 183 Wn.2d 680.  In *O'Dell*, we agreed with *Ha'mim* that youth is not a per se mitigating factor, but we described that case as stating that youth can be a mitigating factor if a young adult can show how their youthfulness impacted

---

[1] While the Court of Appeals added brackets around "sentencing," Kennedy's PRP did not. Instead, his PRP misquoted the newly discovered evidence standard as requiring evidence that """(1) will probably change the result of the sentencing; (2) was discovered since sentencing . . ."""  without inserting brackets indicating that "sentencing" replaced "trial" in his articulation of the standard.  PRP at 3 (quoting *In re Pers. Restraint of Brown*, 143 Wn.2d 431, 453, 21 P.3d 687 (2001) (quoting *State v. Williams*, 96 Wn.2d 215, 223, 634 P.2d 868 (1981))).  In his supplemental brief in this court, Kennedy's counsel inserts brackets.  Pet'r's Suppl. Br. at 13-14. And in his answer to amicus, he acknowledges the earlier misquote and "regrets the error."  *See* Pet'r's Answer to Amicus at 3 n.2.

10

*In re Pers. Restraint of Kennedy*, No. 99748-9

their crime. *O'Dell*, 183 Wn.2d at 698. The Court of Appeals in *Kennedy* highlighted that *O'Dell* cited research about the mitigating qualities of young adults from 2004. *Kennedy*, 16 Wn. App. 2d at 430. All of this demonstrated that "the research regarding neurodevelopment of late adolescents was available in 2007 when Kennedy was sentenced, although it has evolved over time." *Id.*

Because Kennedy's PRP presented evidence that could have been discovered before sentencing, the court concluded that he could have argued for consideration of youthfulness as a mitigating factor based on then available science. *Id.* It therefore held that Kennedy failed to present new evidence that could not have been discovered before trial by the exercise of due diligence, and it dismissed Kennedy's PRP as time barred. *Id.*

Kennedy moved for discretionary review of the Court of Appeals' decision, which we granted. In his supplemental briefing, Kennedy raised for the first time another statutory basis for exempting his PRP from the one-year time bar. Specifically, he argues that this court's decision in *Monschke* is a significant and retroactive change in the law that is material to his sentence. RCW 10.73.100(6). After granting review, we accepted an amicus brief from Washington Association of Prosecuting Attorneys (WAPA).

11

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Kennedy*, No. 99748-9

ANALYSIS

Society has a significant interest in the finality of criminal convictions. That is why collateral attacks on convictions made through a PRP are allowed only in "extraordinary" circumstances. *In re Pers. Restraint of Coats*, 173 Wn.2d 123, 132, 267 P.3d 324 (2011). Given the importance of finality of judgments and sentences, "[t]he bar facing a petitioner is high, and overcoming it is necessary before this court will disturb a settled judgment." *Fero*, 190 Wn.2d at 14-15. To gain relief through a PRP, a petitioner must make a heightened showing of "actual and substantial prejudice" for a constitutional error or "'a complete miscarriage of justice'" for a nonconstitutional error. *Light-Roth*, 191 Wn.2d at 333. (quoting *In re Pers. Restraint of Gronquist*, 138 Wn. 2d 388, 396, 978 P. 2d 1083 (1999)).

A PRP must generally be filed within one year of the petitioner's judgment and sentence becoming final. RCW 10.73.090(1). Because Kennedy filed his PRP more than a year after his judgment and sentence became final, his PRP is procedurally barred unless his judgment and sentence is facially invalid or presents solely grounds for relief that are exempt from the time bar under RCW 10.73.100. *Id*. As noted, Kennedy argues his PRP is exempt under two statutory exemptions: (1) "newly discovered evidence" consisting of advancements in adolescent neuroscience that Kennedy contends would have changed the outcome of the sentencing court's discretion and (2) this court's plurality decision in *Monschke*,

12

*In re Pers. Restraint of Kennedy*, No. 99748-9

which Kennedy argues is a significant and retroactive change in law that is material to his sentence. RCW 10.73.100(1), (6). Because Kennedy's PRP does not meet the requirements of either exemption, we affirm the Court of Appeals and hold that Kennedy's PRP is time barred.

I.     Kennedy's PRP Does Not Present Newly Discovered Evidence That Would Have Probably Changed the Outcome

RCW 10.73.100(1) provides that a PRP is exempt from the one-year time bar when it presents "[n]ewly discovered evidence, if the defendant acted with reasonable diligence in discovering the evidence and filing the petition or motion." To meet the newly discovered evidence exemption, a petitioner must present evidence that "(1) will probably change the result of the trial, (2) was discovered since the trial, (3) could not have been discovered before trial by the exercise of due diligence, (4) is material, and (5) is not merely cumulative or impeaching." *Fero*, 190 Wn.2d at 15 (citing *State v. Williams*, 96 Wn.2d 215, 223, 634 P.2d 868 (1981)).

Kennedy offers Dr. Steinberg's declaration describing the evolving research of adolescent brain development since Kennedy was sentenced as "newly discovered evidence" that exempts his PRP from the time bar under RCW 10.73.100(1).[2]

---

[2] Kennedy does not argue that his own declaration is newly discovered evidence for purposes of exempting his PRP from the one-year time bar. Nor does he address how this testimony should be considered in light of the trial court's findings of fact as well as his statements and those of his family members during his sentencing hearing.

*In re Pers. Restraint of Kennedy*, No. 99748-9

Kennedy argues that the new research and studies outlined in Dr. Steinberg's declaration would have allowed him to argue for a mitigated sentence and probably would have changed a judge's discretionary sentencing decision.

We disagree and hold that Dr. Steinberg's declaration does not qualify as newly discovered evidence. At the time Kennedy was sentenced, courts including this one, recognized that juvenile brain science supported arguments for leniency based on the mitigating qualities of young adults. While the research and studies supporting that argument for young adults Kennedy's age are more complete today, Kennedy fails to present "new" evidence within the meaning of the newly discovered evidence exemption. Kennedy further fails to show how his proffered evidence would probably change the result at trial, as it relates solely to the trial court's discretionary sentencing decision.

The newly discovered evidence exemption requires proof that the proffered evidence "could not have been discovered before trial by the exercise of due diligence." *Williams*, 96 Wn.2d at 223. This proof is essential to showing something "new," rather than merely presenting additional evidence that further supports an available argument. Kennedy fails to show that his proffered scientific evidence supporting a mitigated sentence was unavailable at the time of his sentencing.

14

*In re Pers. Restraint of Kennedy*, No. 99748-9

It is undisputed that the mitigating qualities of youth support an argument for an exceptional downward sentence for young adults as well as juveniles. In *O'Dell*, this court considered whether a young adult defendant above the age of 18 could argue that their youth warranted an exceptional mitigated sentence. 183 Wn.2d at 689. The State had argued that our precedent did not allow for consideration of youth, but we rejected this argument and made clear that our previous decision in *Ha'mim*, 132 Wn.2d 834, "held only that the trial court may not impose an exceptional sentence *automatically* on the basis of youth, absent any evidence that youth in fact diminished a defendant's culpability." *Id.* (emphasis added). *Ha'mim* recognized that youth could relate to a youthful defendant's "capacity to appreciate the wrongfulness of his or her conduct, or to conform his or her conduct to the requirements of the law," RCW 9.94A.535(1)(e), but held that age alone is not a mitigating factor because it "does not relate to the crime." 132 Wn.2d at 847. Our decision in *O'Dell* therefore disavowed *Ha'mim* to the extent that it could be read as concluding that youth could never warrant an exceptional sentence. *O'Dell*, 183 Wn.2d at 694-95.

As highlighted by Kennedy in his briefing, a main part of *O'Dell*'s characterization of *Ha'mim* had to do with advances in the understanding of adolescent brain development explained in the United States Supreme Court's cases of *Roper v. Simmons*, 543 U.S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005), *Graham*

15

*In re Pers. Restraint of Kennedy*, No. 99748-9

*v. Florida*, 560 U.S. 48, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010), and *Miller*, 567 U.S. 460. *O'Dell*, 183 Wn. 2d at 691-95. Although those cases all discussed the mitigating qualities of youth for juvenile offenders, *O'Dell* explained their reasoning rests on "psychological and neurological studies showing that the "'parts of the brain involved in behavior control'"continue to develop well into a person's 20s." *Id*. at 691-92 (footnote omitted) (quoting *Miller*, 567 U.S. at 472 (quoting *Graham*, 560 U.S. at 68)). As an example of such studies, the court relied on an article from 2004 that found that "'[t]he dorsal lateral prefrontal cortex, important for controlling impulses, is among the latest brain regions to mature without reaching adult dimensions until the early 20s.'" *Id*. at 692 n.5 (alteration in original) (quoting Jay N. Giedd, *Structural Magnetic Resonance Imaging of the Adolescent Brain*, 1021 ANN. N.Y. ACAD. SCI. 77 (2004)). *O'Dell* also relied on *Roper* in which the United States Supreme Court stated that "'[t]he qualities that distinguish juveniles from adults do not disappear when an individual turns 18 [just as] some under 18 have already attained a level of maturity some adults will never reach.'" *Id*. at 695 (second alteration in original) (quoting *Roper*, 543 U.S. at 574).

Given the advances in neuroscience as recognized by the United States Supreme Court, this court concluded that youth may provide a basis for an exceptional mitigated sentence for young adults as well as juveniles. *Id*. at 695-96. We explained that the trial court abused its discretion by completely failing to

16

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Kennedy*, No. 99748-9

recognize its discretion to consider youth as a mitigating factor under *Ha'mim*. *Id.* at 697. Last, the court in *O'Dell* highlighted that a defendant need not present expert testimony about the mitigating qualities of youth at sentencing, stating instead that "lay testimony may be sufficient." *Id.*

The availability of an argument for mitigating a young adult's sentence based on youthful characteristics was further explained in *Light-Roth*. In that case, this court considered whether *O'Dell* was a significant retroactive change in the law that was material to Light-Roth's sentence, thereby exempting Light-Roth's PRP from the one-year time bar under RCW 10.73.100(6). *Light-Roth*, 191 Wn.2d at 330. Analyzing whether *O'Dell* marked a significant change in the law for the purposes of the exemption, the court stated that "[t]he pertinent inquiry here is whether our decision in *State v. Ha'mim*, 132 Wn.2d 834, 940 P.2d 633 (1997), precluded Light-Roth from raising or the trial court from considering Light-Roth's youthfulness as a mitigating factor to support an exceptional sentence downward." *Id.* at 334. Based on *O'Dell*, we determined that *Ha'mim* did not prevent a defendant from arguing youth as a mitigating factor; instead, *Ha'mim* "held that the defendant must show that his youthfulness relates to the commission of the crime." *Id.* at 336. Thus, this court recognized that trial courts have long had the discretion to impose an exceptional mitigated sentence based on youth. *Id.* Because Light-Roth could have argued that youth was a mitigating factor for his crimes under *Ha'mim*, this court

17

*In re Pers. Restraint of Kennedy*, No. 99748-9

concluded that *O'Dell* was not a significant change in law to exempt Light-Roth's PRP from the one-year time bar. *Id.*[3]

The holding in *Light-Roth* is directly applicable to Kennedy's case. Indeed, Kennedy initially brought a CrR 7.8 motion for resentencing based on the Court of Appeals opinion in *Light-Roth*, which had held that *O'Dell* announced a new rule that applied retroactively. Resp't's Br., App. D. (Wash. Ct. App. No. 53360-0-II (2019)). Dr. Steinberg's declaration reviews the many studies and articles showing that young adults can have the same mitigating qualities of youth as juveniles, supporting an argument for finding them less criminally culpable and deserving of lesser punishment than more mature adults. Significant research supported such an argument at the time Kennedy was sentenced in 2007. *O'Dell* cited an article as early as 2004 for that proposition, 183 Wn.2d at 692 n.5, and *Roper* in 2005 recognized that immature characteristics can continue beyond the age of 18. 543 U.S. at 574.

---

[3] In a footnote, the court also explained that *Roper* could have provided a basis for Light-Roth to seek a mitigated sentence. 191 Wn.2d at 338 n.3 ("Notably, in 2005, the United States Supreme Court, in *Roper v. Simmons*, 543 U.S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005), held that it was unconstitutional to impose the death penalty on individuals under the age of 18. . . . Even assuming *Ha'mim* precluded Light-Roth from arguing youth as a mitigating factor, which it did not, Light-Roth still could have raised the argument on appeal by invoking *Roper*.").

*In re Pers. Restraint of Kennedy*, No. 99748-9

Kennedy points to other parts of the 2004 article indicating that the link between the neuroscience of young adults and their behavior remained to be more fully developed. But the same can be said of almost any scientific theory, and Kennedy admits in his briefing and through Dr. Steinberg's declaration that studies were available at the time he was sentenced explaining that brains continue to mature at least through age 19 and even into one's early 20s. In fact, Dr. Steinberg's declaration shows that the research and relevant understanding about the neurodevelopment of those above the age of 18 existed as early as 2003, which is 15 years before his declaration in aid of Kennedy's PRP was filed in 2018. PRP, Decl. of Steinberg at 6 (Wash. Ct. App. No. 53360-0-II (2019)) ("This contemporary view of brain development as ongoing at least until age 21 stands in marked contrast to the view held by scientists as recently as 15 years ago.").

At sentencing, Kennedy's counsel argued that his youth warranted a low end standard range sentence. Although he did not ask for an exceptional mitigated sentence on that basis nor frame his argument in terms of neuroscience, it cannot be said that the argument Kennedy now seeks to make was unavailable to him in the exercise of reasonable diligence. *See* RCW 10.73.100(1); *Light-Roth*, 191 Wn.2d at 334-38. Importantly, *O'Dell* holds that a defendant need not present expert testimony setting out the scientific basis for recognizing similarities in the neurodevelopment of juveniles and emerging adults in order to argue for a mitigated

19

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Kennedy*, No. 99748-9

sentence. 183 Wn.2d at 697. Lay testimony about Kennedy's youthfulness—including statements such as those made in his 2019 declaration—could have been presented by Kennedy and considered by the sentencing court in 2007. *Id.* For this reason, Kennedy fails to satisfy the "newly discovered evidence" test. RCW 10.73.100(1).

Furthermore, Kennedy does not establish that his proffered new evidence would have changed the outcome in his case. The newly discovered evidence exemption under RCW 10.73.100(1) requires the petitioner to show that the new evidence would probably have changed the result at trial; such evidence typically relates to a defendant's guilt or innocence. *See Williams*, 96 Wn.2d at 223. But Kennedy argues that the recent neuroscientific evidence outlined in Dr. Steinberg's declaration would have allowed him to make a stronger argument for a mitigated sentence and, in that way, would probably have changed the court's discretionary sentencing decision. Kennedy recognizes that the newly discovered evidence exemption has never been applied in this context, and the Court of Appeals decision below appears to be the only case in which the standard for the newly discovered evidence rule is stated as applying to new evidence that would likely change a sentencing outcome. *Kennedy*, 16 Wn. App. 2d at 428-29. In its amicus brief, WAPA urges this court to limit the newly discovered evidence exemption in RCW

*In re Pers. Restraint of Kennedy*, No. 99748-9

10.73.100(1) to evidence of a defendant's innocence that could have changed the outcome at the guilt phase of a trial. Br. of Amicus Curiae WAPA at 7-21.

We believe sufficient guidance is found in RCW 10.73.100(1) and existing precedent setting out the five factors for the newly discovered evidence exemption. *See Fero*, 190 Wn.2d at 15. The statute follows earlier precedent that had allowed for postjudgment collateral attacks based on new evidence that probably would have changed the result of the trial. *See, e.g.*, *Libbee v. Handy*, 163 Wash. 410, 418, 1 P.2d 312 (1931); *State v. Adams*, 181 Wash. 222, 229-30, 43 P.2d 1 (1935). Because RCW 10.73.100(1) provides an exemption to the one-year time bar and allows for an otherwise untimely showing of unlawful restraint, the newly discovered evidence exemption is properly read in relation to the definitions of unlawful restraint in RAP 16.4. More specifically, the newly discovered evidence rule relates to RAP 16.4(c)(3), which provides that restraint is unlawful when "[m]aterial facts exist which have not been previously presented and heard, which in the interest of justice require vacation of the conviction, *sentence*, or other order entered in a criminal proceeding or civil proceeding instituted by the state or local government." And RAP 16.4(d) references the exemptions in RCW 10.73.100, stating that a court can grant relief in a PRP only when "such relief may be granted under RCW 10.73.090, or .100."

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Kennedy*, No. 99748-9

Given the intersection of these appellate rules and statutes, we decline WAPA's invitation to narrowly define the reach of the newly discovered evidence exemption. Even if we apply the newly discovered evidence exemption to sentencing proceedings, Kennedy has not made a sufficient showing that his proffered new evidence would have changed the trial court's discretionary sentencing decision. As noted, evidence supporting Kennedy's argument for a mitigated sentence based on his youthful characteristics was available at the time of sentencing, as confirmed by Dr. Steinberg's declaration and the relevant precedent at the time. It is entirely speculative whether the additional studies Kennedy points to would have persuaded the trial court to impose a mitigated sentence below the standard range, particularly in light of the aggravating circumstances the trial court found.[4] Moreover, in light of the broad range of information that might support

---

[4] While a trial court's complete failure to consider an available mitigating factor such as youthfulness is appealable and represents an abuse of discretion, *O'Dell*, 183 Wn.2d at 697-98, Kennedy does not argue that the sentencing court failed to recognize its discretion to impose a mitigated sentence. *See* RCW 9.94A.535(1) (recognizing court's broad authority to impose a mitigated sentence). He instead contends that defense counsel failed to ask the court to impose a mitigated sentence, arguing only for a sentence at the bottom of the standard range in light of Kennedy's youth. A standard range sentence is generally unappealable, RCW 9.94A.585(1), and a trial court can consider a wide range of information in setting that sentence. *See* ER 1101(c)(3) (exempting sentencing from evidence rules). Nor does Kennedy argue that his proffered new evidence provides a basis to challenge his exceptional sentence. *See State v. Grewe*, 117 Wn.2d 211, 214, 813 P.2d 1238 (1991); RCW 9.94A.585(4) ("To reverse a sentence which is outside the standard sentence range, the reviewing court must find: (a) Either that the reasons supplied by the sentencing court are not supported by the record which was before the judge or that those reasons do not justify a sentence outside the standard

*In re Pers. Restraint of Kennedy*, No. 99748-9

mitigation and could have been argued at sentencing, allowing an exemption from the time bar on this basis would unjustifiably undermine the finality of criminal convictions and sentences. *See State v. Shove*, 113 Wn.2d 83, 88, 776 P.2d 132 (1989) ("Final judgments in both criminal and civil cases may be vacated or altered only in those limited circumstances where the interests of justice most urgently require."). We therefore reject Kennedy's argument to exempt his PRP from the one-year time bar based on the newly discovered evidence exemption in RCW 10.73.100(1).

We turn next to the new argument raised in Kennedy's supplemental brief: that this court's decision in *Monschke*, 197 Wn.2d 305, provides a basis to exempt his PRP from the time bar under RCW 10.73.100(6).

II.     Kennedy's Petition Is Not Exempt Based on RCW 10.73.100(6) Because
        *Monschke*  Is Not Material to His Sentence

Kennedy did not raise an argument based on RCW 10.73.100(6) until his supplemental brief, so a preliminary question is whether the court should consider it. Kennedy raised this argument in as timely a manner as possible, as the *Monschke* decision that he contends entitles him to relief under 10.73.100(6) was issued after Kennedy filed his PRP in the Court of Appeals. Therefore, while we often avoid

sentence range for that offense; or (b) that the sentence imposed was clearly excessive or clearly too lenient.").

23

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Kennedy*, No. 99748-9

reaching issues that were not raised below, we find it appropriate to address Kennedy's argument that *Monschke* exempts his PRP from the one-year time bar.

In order to show a significant and retroactive change in law that justifies collateral relief, RCW 10.73.100(6) requires a petitioner to show "'(1) a [significant] change in the law (2) that is material and (3) that applies retroactively.'" *Light-Roth*, 191 Wn.2d at 333 (alteration in original) (quoting *In re Pers. Restraint of Colbert*, 186 Wn.2d 614, 619, 380 P.3d 504 (2016)). Because we can address these three requirements in any order, *id.*, our analysis will focus on the second requirement, which is dispositive. For this court to grant relief, *Monschke* must be "determinative of a material issue" at Kennedy's sentencing. *State v. Miller*, 185 Wn.2d 111, 114, 371 P.3d 528 (2016). In other words, *Monschke* must have changed the law in a way that entitles Kennedy to relief. It does not.

In *Monschke*, this court considered whether the sentencing statute for aggravated first degree murder, RCW 10.95.030, was unconstitutional under the Eighth Amendment or article I, section 14 as applied to 19- and 20-year-olds. 197 Wn.2d at 306-07; U.S. CONST. amend. VIII; WASH. CONST. art. I, § 14. There was no majority opinion, and the court fractured on the threshold issue of which statutory exemption in RCW 10.73.100 applied so that the petitioners' otherwise untimely claims could be considered. The lead opinion, authored by Justice Gordon McCloud, garnered four votes for its conclusion that the petitions were exempt from

24

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

the one-year time bar because the "statute that the defendant was convicted of violating was unconstitutional on its face or as applied to the defendant's conduct." RCW 10.73.100(2). Reasoning that RCW 10.95.030 requires a defendant convicted of aggravated first degree murder to receive an LWOP sentence, the lead opinion concluded that the first degree aggravated murder sentencing statute was part of the conviction itself. *Monschke*, 197 Wn.2d at 309-10. The lead opinion expressly differentiated the aggravated murder sentencing statute from other sentencing statutes: "[T]he petitioners challenge not a regular sentencing statute but the aggravated murder statute. The aggravated murder statute is different from other sentencing statutes—it requires the State to charge and the jury (or other trier of fact) to find the defendant 'guilty' of that very same aggravated murder charge." *Id.* at 310.

Chief Justice González's concurring opinion disagreed with the lead opinion on this analysis. *Id.* at 329 (González, C.J., concurring). The concurrence instead agreed with the dissent's reasoning that RCW 10.73.100(2) does not apply to sentencing statutes. *Id.* at 334-36 (Owens, J., dissenting). Together, the concurrence and the dissent make a total of five votes for the conclusion that RCW 10.73.100(2) did not provide an exemption for the petitioners in *Monschke*. But unlike the dissent, the concurrence would have found the petitions exempt under RCW 10.73.100(6) on the separate ground that *O'Dell* was a retroactive and significant change in law

*In re Pers. Restraint of Kennedy*, No. 99748-9

material to the petitioner's sentences. *Id.* at 329 (González, C.J., concurring). Chief Justice González would have overruled *Light-Roth* to reach this holding. *Id*.

Kennedy relies on the reasoning of the lead opinion, which concluded that imposing mandatory LWOP on young adults is unconstitutional under article I, section 14 as applied to 19- and 20-year-olds because the mandatory nature of the LWOP sentence under the statute "creates an unacceptable risk that youthful defendants without fully developed brains will receive a cruel LWOP sentence." *Id.* at 325. The lead opinion noted that neuroscience does not support any meaningful difference between those who are 17 and those who are 18; therefore, drawing the line at 18 for a mandatory LWOP sentence is arbitrary. *Id.* at 321-25. The lead opinion was careful to note it was not concluding that LWOP is categorically barred for young adults and was therefore not announcing a decision similar to *State v. Bassett*, 192 Wn.2d 67, 428 P.3d 343 (2018). *Id.* at 325-27. Instead, the lead opinion primarily relied on the United States Supreme Court's holdings that the Eighth Amendment bars mandatory LWOP for juvenile homicide offenders where the sentencing court lacks discretion to sentence juveniles with meaningful consideration of the mitigating qualities of youth. *Id.* at 327-28 (citing *Miller*, 567

26

*In re Pers. Restraint of Kennedy*, No. 99748-9

U.S. at 483); *see also Montgomery v. Louisiana*, 577 U.S. 190, 206-12, 136 S. Ct. 718, 193 L. Ed. 2d 599 (2016).[5]

Even if *Monschke*'s lead opinion could be read as announcing a holding of this court, Kennedy cannot show that such a holding is material to his sentence because he was neither convicted of aggravated first degree murder under RCW 10.95.020 nor sentenced to mandatory LWOP under RCW 10.95.030. Instead, Kennedy was convicted of and sentenced for homicide by abuse under RCW 9A.32.055, and the court imposed a term of years sentence of 380 months that was not mandated by any sentencing statute. The *Monschke* lead opinion addressed only sentences under RCW 10.95.030, stating that its conclusion "'flow[ed] straightforwardly from our precedents'" like *Miller*'s holding, and therefore related specifically to the constitutional concerns about the *mandatory nature* of an *LWOP*

---

[5] Kennedy also argues for an expansion of the reasoning of *Monschke*'s lead opinion by relying on this court's decision in *State v. Houston-Sconiers*, 188 Wn.2d 1, 8, 391 P.3d 409 (2017). He argues "that the requirements of *Houston-Sconiers* apply with equal force to an 18-year-old" and that "the 'children are different' rule must be extended not just to 18, but up until at least 21 years of age." Pet'r's Suppl. Br. at 17-18. But Kennedy does not argue that *Houston-Sconiers*, which discusses the mitigating qualities of youth only for *juveniles* being sentenced as adults, is a significant and retroactive change in law that is material to his sentence under RCW 10.73.100(6). Nor could he given that Kennedy was a *young adult* at time of the crime. To the extent Kennedy suggests that *Monschke* announced a broad principle requiring the consideration of youth at all sentences received by young adults under the Sentencing Reform Act of 1981, ch. 9.94A RCW, he identifies no reasoning in *Monschke* that extends its holding beyond the context of mandatory LWOP sentences or any reasoning that extends *Houston-Sconiers*'s holding.

27

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*In re Pers. Restraint of Kennedy*, No. 99748-9

*sentence.* *Monschke*, 197 Wn.2d at 328 (quoting *Miller*, 567 U.S. at 483). The lead opinion recognized that the mandatory nature of LWOP under RCW 10.95.030 makes that statute different from other sentencing statutes and thus subject to the exemption in RCW 10.73.100(2). *See id.* at 310.

Kennedy's sentence was not mandatory in any respect and is not akin to an LWOP sentence. Under the applicable Sentencing Reform Act of 1981, ch. 9.94A RCW, provisions, the sentencing judge exercised discretion without any prohibition on going below the standard range for Kennedy's crime. And he imposed an exceptional upward sentence based on findings on two of three charged aggravating factors. The complete lack of discretion that the lead opinion found rendered RCW 10.95.030 unconstitutional as to young adults is not present here; Kennedy was sentenced under a "regular sentencing statute" that allows for discretion and does not implicate the same concerns under the Eighth Amendment or article I, section 14. *Id.* at 310, 325-28. Stated differently, discretion such as the trial court exercised in Kennedy's case is the solution to the constitutional problem identified by the lead opinion in *Monschke. See Miller*, 567 U.S. at 476-77, 483; *Jones v. Mississippi*, __ U.S. __, 141 S. Ct. 1307, 1313, 209 L. Ed. 2d 390 (2021) (emphasizing that under *Miller* a "State's discretionary sentencing system is both constitutionally necessary and constitutionally sufficient."). Accordingly, because Kennedy does not show

28

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

how *Monschke* is material to his case, we hold that Kennedy's PRP does not meet

the exemption to the one-year time bar in RCW 10.73.100(6).

CONCLUSION

We affirm the Court of Appeals and hold that Kennedy's PRP is not exempt

from the one-year time bar under RCW 10.73.090(1). The declaration of Dr.

Steinberg does not meet the requirements of the newly discovered evidence

exemption. RCW 10.73.100(1). Nor does Kennedy demonstrate that this court's

decision in *Monschke* constitutes a significant and retroactive change in law that is

material to his sentence. RCW 10.73.100(6). His PRP is therefore subject to the

general rule that a criminal judgment and sentence is final after one year, and it was

properly dismissed.

*In re Pers. Restraint of Kennedy*, No. 99748-9

_____
Stephens, J.

WE CONCUR:

_____     _____
González, C.J.                                     Gordon McCloud, J.

_____     _____
Johnson, J.                                              Yu, J.

_____     _____
Madsen, J.                                       Montoya-Lewis, J.

_____     _____
Owens, J.                                           Whitener, J.